UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID SHUEY,

        Petitioner,

v.                                Case No. 3:19-cv-577-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## **ORDER**

### **I. Status**

Petitioner David Shuey, an inmate of the Florida penal system, initiated this action on May 7, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Shuey challenges a 2005 state court (St. Johns County, Florida) judgment of conviction for armed sexual battery and armed kidnapping. Shuey asserts ten grounds as his basis for seeking relief. See Petition at 4-51.[2] Respondents oppose the Petition. See Response to Petition (Response; Doc. 6) with exhibits (Resp. Ex.).[3] Shuey filed

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

[3] Various pre-trial hearing transcripts are included in Resp. Ex. A, which is the record from Shuey's direct appeal. However, several of these transcripts

a brief in reply. <u>See</u> Petitioner's Reply (Reply; Doc. 36). This case is ripe for review.

## II. Relevant Procedural History

On August 27, 2003, the State of Florida (State) charged Shuey by way of Information with armed sexual battery (count one) and armed kidnapping (count two). Resp. Ex. A at 6. Following a trial, a jury found Shuey guilty as charged, with specific findings as to each count that Shuey carried, displayed, used, threatened to use, or attempted to use a firearm during the commission of the offenses. <u>Id.</u> at 608-09. The circuit court sentenced Shuey to life in prison, with twenty-five-year minimum mandatory sentences, as to each count. <u>Id.</u> at 633-37. The circuit court ordered the sentences to run concurrently with each other and consecutively to a sentence imposed in another case. <u>Id.</u>

Shuey appealed his convictions and sentences to Florida's Fifth District Court of Appeal (Fifth DCA). <u>Id.</u> at 645. In his initial brief, Shuey, with the assistance of counsel, argued that: (1) the State failed to prove its case beyond a reasonable doubt; (2) the circuit court erred in granting the State's request for a special jury instruction; (3) the prosecutor made improper closing arguments; (4) the judgment of acquittal should have been granted; (5) counsel

do not use the same pagination as the rest of the record. As such, the Court will cite to these transcripts by using the docket entry number and relevant page number (Doc. ___ at ___.)

2

was ineffective for failing to ask for a twelve person jury; (6) counsel was ineffective for waiving his speedy trial rights and Shuey was not present at all critical stages of the proceedings; (7) counsel was deficient for failing to have Shuey's competency evaluated at an earlier time; (8) the circuit court erred in denying his motion to change venue; (9) the circuit court erred when it allowed the State to recall the victim; (10) the cumulative effect of the errors deprived him of a fair trial; and (11) the judgment erroneously reflects that Shuey pled no contest. Resp. Ex. C. The State filed an answer brief. Resp. Ex. D. On March 9, 2007, the Fifth DCA affirmed Shuey's convictions and sentences but remanded to correct a scrivener's error in the judgment and sentence form. Resp. Ex. E. The Fifth DCA issued the mandate on March 28, 2007. Id.

On May 29, 2008, Shuey filed a pro se petition for writ of habeas corpus in the Fifth DCA. Resp. Ex. F. In the petition, he argued that: (1) the charging instrument, jury instructions, and verdict form were highly prejudicial; and (2) appellate counsel was ineffective for failing to raise a fundamental error claim regarding the jury instructions. The Fifth DCA denied the petition on the merits and also denied Shuey's motion for rehearing. Resp. Ex. H.

On February 3, 2009, Shuey filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), in which he argued the circuit court erroneously sentenced him for a capital offense. Resp. Ex. I. The circuit court denied the motion. Id.

On March 26, 2009, Shuey filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. J. Shuey argued in the motion that his counsel was deficient for: (1) waiving his speedy trial rights; (2) failing to withdraw as counsel due to a conflict; (3) failing to move to disqualify the trial judge; (4) failing to obtain exculpatory evidence and seek a continuance; (5) failing to file a motion to suppress; (6) failing to call an expert in eyewitness testimony; (7) failing to call Dr. Jason McLaughlin as a witness; (8) failing to introduce naked photographs of Shuey's body at trial; (9) failing to suppress the victim's trial testimony or adequately cross-examine the victim; (10) failing to investigate an audio recording of a 911 call; (11) failing to file a motion to continue; (12) failing to request a twelve person jury; (13) failing to re-raise the motion for change of venue, move to sequester the jury, and strike juror Enid Fitzpatrick; (14) failing to object to Detective Strausbaugh's testimony; (15) conceding the crimes occurred; (16) interfering with his right to testify; (17) failing to object and move for mistrial following improper prosecutorial comments; (18) failing to file a motion to dismiss and adequately argue a motion for judgment of acquittal; and (19) failing to object to a special jury instruction. Id. Shuey also raised a twentieth ground for relief, alleging the cumulative impact of these errors prejudiced him. Id. The circuit court dismissed the motion with leave to amend because the motion exceeded

4

the reasonable page limit. Id. Shuey appealed the dismissal and on May 4, 2010, the Fifth DCA affirmed the dismissal. Resp. Ex. K.

On February 9, 2010, Shuey filed an amended motion for postconviction relief pursuant to Rule 3.850 (Rule 3.850 Motion), in which he raised the same grounds for relief. Resp. Ex. L at 21-96. The circuit court summarily denied relief on some of the claims but ordered an evidentiary hearing on the others. Id. at 147-72. Following the evidentiary hearing, the circuit court denied relief on the remaining claims. Id. at 786-844. The Fifth DCA per curiam affirmed the denial of relief and issued the mandate on May 6, 2019. Resp. Ex. P.

On April 29, 2010, the circuit court granted Shuey's motion to correct an illegal sentence to the extent that it struck the twenty-five-year minimum mandatory sentences. Resp. Ex. L at 115-17.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations,

which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Shuey's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is

"'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S.

Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[4] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

---

[4] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme

court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the

---

[7] Murray v. Carrier, 477 U.S. 478 (1986).

continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a

14

court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds

15

another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

In Ground One, Shuey alleges that his trial counsel failed to investigate and present exculpatory alibi evidence. Petition at 4-6. According to Shuey, he could not have committed the crimes in St. Johns County because he was in Duval County the whole day. Id. He asserts that he requested his counsel investigate and obtain evidence from several locations in Duval County (a hotel, a formal wear store, a golf course, and an airport) to establish his presence there during the period in which the offenses occurred. Id. However, Shuey asserts that it took his counsel a month to hire an investigator, with the investigation beginning only three weeks before his trial. Id. A week later, the investigator reported that he was unable to obtain alibi evidence or any potential witnesses. Id. The investigator allegedly stated too much time had elapsed since the incident and he needed more time to investigate. Id. Despite this request, Shuey alleges that his counsel failed to request a continuance and failed to subpoena business records or potential witnesses. Id. Shuey further

16

contends that he requested counsel investigate the following:  (1) the fact that Shuey lived in Connecticut; (2) information about a person who placed a 911 call; (3) Shuey was not in the victim's office a month or two earlier; (4) photographs of Shuey's body and measurements of his penis; (5) the layout of the apartment complex; (6) Michelle Kimpson's failure to see Shuey despite running to the scene immediately thereafter; (7) information about other men in the photo lineup; and (8) the victim's worker compensation claim.[8] Id. Shuey maintains that the circuit court focused only on Shuey's trial attorney but failed to analyze this issue from the perspective of his initial attorney who later withdrew. Id.

Shuey raised a substantially similar claim in his Rule 3.850 Motion. Resp. Ex. L at 33-36. Following an evidentiary hearing, the circuit court denied relief. Id. at 790-802. As to Shuey's claim that counsel failed to investigate an alibi defense, the circuit court explained in pertinent part:

> The Court finds credible Attorney Lee's testimony that the investigative firm was unable to procure any records corroborating Defendant's whereabouts on the afternoon of November 24, 2002. Further, the Court finds that Defendant has failed to establish that Attorney Lee's handling of the alibi issue constituted ineffective assistance of counsel. Attorney Lee's testimony clearly established that an independent private investigator firm of his choice was assigned by

---

[8] A number of these allegations are the basis of Shuey's other grounds for relief. To the extent these claims are raised elsewhere in the Petition, the Court will address those claims separately.

the Court to investigate Defendant's whereabouts on the afternoon of November 24, 2002; and that the O'Malley firm was instructed by Attorney Lee to specifically look into Defendant's phone records, his presence at After Hours Formalwear, his presence at Mill Cove Golf Course, and his flight and rental car records. The Court finds that the two pieces of alibi evidence that would have been sufficient to establish an alibi for the time frame during which [the victim] alleged the incident occurred would have been records from After Hours Formalwear at The Avenues mall and from Mill Cove Golf Course, as those are the places at which Defendant testified he was present during the specific time frame of the incident. The Court concurs with Attorney Lee that neither the Verizon phone record nor the Avis rental car record presented at the evidentiary hearing would have provided credible alibi evidence for the time frame during which [the victim] alleged the incident actually occurred. Accordingly, the Court finds credible Attorney Lee's testimony that having those records prior to trial would not have affected his trial strategy nor compelled him to file a motion for continuance. Additionally, the Court finds that Attorney Lee's reliance on the report from the investigative firm the Court appointed to handle the case, regardless of the fact that the firm was unable to obtain records that Defendant's family was later able to obtain, constituted sound trial strategy.

Finally, the Court does not find credible Defendant's assertion that he would have chosen to take the stand to testify as to his alibi defense had the O'Malley firm procured the Avis and Verizon records. The testimony at the evidentiary hearing indicates that had Defendant testified, he would have opened the door to Williams Rule evidence regarding other sexual batteries of which he had previously been charged and/or convicted. Indeed, Defendant acknowledged that if he had known testifying would potentially open the door to Williams Rule evidence,

18

he would need to confer with Attorney Lee before making a decision as to whether to testify to the existence of the aforementioned alibi evidence. Moreover, the Court finds unpersuasive Defendant's assertion that he would have chosen to testify solely on the basis of the Avis and Verizon records, neither of which establishes an alibi for the time frame during which [the victim] alleged the incident occurred. With respect to Defendant's assertion that counsel should have moved for a continuance to afford the investigative firm more time to procure records, the Court finds that the testimony at the evidentiary hearing establishes Attorney Lee received a complete investigative report from the O'Malley firm indicating that all of Defendant's requests for alibi records had been investigated. The Court again emphasizes that Attorney Lee testified that he did not believe he needed "time, so much as facts"; and that he specifically would have liked to have received some sort of confirmation from either After Hours Formalwear or Mill Cove Golf Course as to Defendant's whereabout, but that the investigative firm was unable to corroborate Defendant's presence at either of those locations on the afternoon of November 24, 2002. Defendant has provided no testimony or evidence establishing that records exist confirming his presence at either of these locations on November 24, 2002. Accordingly, the Court finds that Defendant has failed to establish either deficient performance or prejudice with respect to the failure to further investigate facts to establish an alibi defense, and this portion of ground four will be denied.

Id. at 797-99 (footnote omitted). Concerning the layout of the apartment complex and Kimpson's failure to observe Shuey fleeing the scene, the circuit court wrote:

The Court finds that this claim is meritless. Defendant has wholly failed to establish any facts or argument

19

> supporting his assertion that a determination of the
> apartment complex layout where Michelle Kimpson
> lived in relation to the leasing office would have been
> in any way helpful to his case. Even if testimony from
> Ms. Kimpson regarding running to [the victim's] aid
> and not seeing the perpetrator of the offense had been
> elicited at trial, Defendant has failed to establish a
> nexus between such proposed testimony and counsel's
> purported failure to fully investigate the layout of her
> apartment complex and/or the route that she would
> have taken to get to the office. Defendant's trial
> counsel "cannot be deemed ineffective for failing to
> make a meritless argument." Peterson[ v. State, 154
> So. 3d 275, 280 (Fla. 2014)] (citing Lukehart v. State,
> 70 So. 3d 503, 513 (Fla. 2011)).

Id. at 800 (footnotes omitted). The circuit court also determined that trial

counsel's strategy to concede that the victim was actually sexually assaulted

was reasonable and presenting Kimpson's testimony would not have been

consistent with that strategy. Id. at 800-01. Lastly, as to evidence of the

victim's worker compensation claim, the circuit court stated:

> This allegation is refuted for the same reasons as
> Defendant's argument regarding counsel's failure to
> investigate the layout of the Lakeview Apartment
> complex in relationship to Ms. Kimpson's apartment.
> Attorney Lee specifically testified that he chose not to
> employ a trial strategy wherein he would attempt to
> discredit the victim's testimony that the incident
> occurred. In fact, upon cross-examination at the
> evidentiary hearing, Attorney Lee expressly
> acknowledged that an alternative course of action
> could have been to present the theory to the jury that
> [the victim's] testimony was unreliable due to the fact
> that she had requested not to work on Sundays, but
> was forced to work despite that request; and that on
> the very first Sunday she was required to work she

20

alleged that the instant attack and sexual assault occurred and filed a worker's compensation claim incident thereto. Again, Attorney Lee stated that he believed this theory ran a high risk of "pissing off the jury" that outweighed its merit in providing useful fodder for impeachment. He additionally testified that his notes and recollection reflect that Defendant was well aware that their trial strategy included conceding that the crime occurred, and that they both felt confident as to the outcome of that strategy prior to trial. The Court accordingly finds that Attorney Lee's decision not to investigate and/or present evidence concerning the worker's compensation claim that [the victim] filed subsequent to the incident constitutes reasonable trial strategy. The Court also finds that it is entirely probable that the jury would view [the victim's] decision to pursue a worker's compensation claim regarding the incident as a prudent decision, and consequently the slight impeachment value of such information is heavily outweighed by the danger of enraging the jury by arguing that [the victim] fabricated the incident. For these reasons, ground four will be denied in its entirety.

Id. at 802. The Fifth DCA per curiam affirmed the denial of relief. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve

---

[9] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

The record reflects that Shuey attempted to dismiss his first attorney, James Jacobs, for a number of reasons, including Jacobs' alleged refusal to allow the Public Defender investigator to search for evidence in support of a possible alibi. Resp. Ex. A at 674-75. Jacobs responded to the allegations by stating that, "as far as any viable alibi, I've been made aware of absolutely none." Id. at 683. Ultimately, the circuit court appointed new counsel, not because Jacobs was ineffective, but because the circuit court determined Shuey and Jacobs had irreconcilable differences. Shuey's new counsel, Sung Lee, became counsel on March 21, 2005, approximately a month and a half before trial. At Lee's first appearance as Shuey's counsel, Lee requested and received funds for a private investigator. Doc. 8-1 at 76-79. Lee later discussed the possibility of filing a notice of alibi depending on the results of the investigation. Resp. Ex. A at 737-39. However, counsel ultimately did not file such a notice or present an alibi defense at trial.

Instead, the defense relied on a misidentification defense, which attempted to hold the State to its burden of proof. At trial, the State presented the victim, an assistant property manager of an apartment, as its key witness.

Resp. Ex. A at 199-282. She testified that she went in to work at the complex on November 24, 2002. Id. at 200-01. According to the victim, she observed a vehicle driving slowly, which made her feel uneasy as if someone was watching her. Id.at 206-07. She quickly returned to her office and a short time later, around 1:00 p.m., Shuey entered her office. Id. at 206-08. Shuey was not wearing a mask or otherwise trying to conceal his face. Id. at 208-09. The victim observed Shuey for approximately fifteen minutes while he feigned interest in renting an apartment. Id. at 210-12. She stated that Shuey's eyes stood out to her because they were set back in his face and were a bluish/gray color. Id. at 209-10. The victim also stated that Shuey had a soft, low voice that was eerily calm. Id. at 216.

At one point during the meeting, the victim was sitting at her desk when Shuey walked behind her, grabbed her shoulder, and pointed a small, silver handgun at her. Id. at 211-15. Shuey forced the victim into a back office, closed the blinds, asked for money, which the victim did not have, and directed her to lock the doors. Id. at 217-19. Shuey then demanded that she undress; however, he realized he left one door unlocked and made the victim walk, without her shirt, to lock the other door. Id. at 219-20. Once back in the office, Shuey made the victim undress at gunpoint, after which he penetrated the victim's vagina and anus with his fingers and penis, which he covered in a condom. Id. at 221-25. Shuey did not undress. Id. at 222. At one point, Shuey made the victim

23

place her sweater over her face, but she made sure she could still see through it. Id. at 224-25. After finishing, Shuey threw the victim's pants at her as she sat up and leaned against the desk about four or five feet away from Shuey. Id. at 224-26. Shuey told her not to say anything and fled out of the backdoor of the office. Id. at 226.

Once Shuey had left, the victim locked the door and called 911, her manager, and her boyfriend. Id. at 230-31. She was taken to a hospital where her sexual assault kit was processed. Id. at 232. Police showed the victim a total of three photo lineups, the first two of which did not result in a positive identification of the suspect. Id. at 233-35, 268, 327-31, 350-53. The final lineup, which occurred almost eight months after the incident, resulted in the victim positively and unequivocally picking Shuey out of the lineup. Id. Indeed, the victim specifically stated at that time, "that's the son of a [expletive] right there." Id. at 235, 331. Law enforcement was unable to link any fingerprints or DNA to Shuey. Id. at 286-87, 296, 325-27, 347-48, 378, 386. Notably, the State presented the testimony of Pamela Doremus, who stated that Shuey attended her wedding the day before the assault and that the last time she saw Shuey was around 10:30 a.m. the morning of the incident. Id. at 357-65.

At the evidentiary hearing on Shuey's Rule 3.850 Motion, both Shuey and his counsel, Lee, testified. Resp. Ex. L at 1022-1126. The State did not call Shuey's first attorney, Jacobs, as a witness. Id. Shuey testified in conformance

24

with his current allegations. Id. at 1026-73. He stated he obtained his cell phone records that showed he placed a call that ended about twenty minutes before the victim stated she observed Shuey enter her office. Id. at 1032-33. According to Shuey, he and his family attempted to obtain documentation from After Hours Tuxedo and Mill Cove golf course, but they were unable to do so due to a change in ownership in both businesses. Id. at 1038. He did, however, obtain documentation from the rental car company, which showed that Shuey returned a rented vehicle on the day of the assault at 3:31 p.m. Id. at 1039.

Lee testified that in the over month and a half he represented Shuey, he met with him six times for lengthy periods of time. Id. at 1077-80. With a court-order, Lee hired a private investigator to search for any alibi evidence at the locations Shuey described. Id. at 1080-82. Based on the investigator's reports, Lee did not believe he could, in good faith, file a notice of alibi. Id. at 1082. According to Lee, it was not a matter of a lack of time but a lack of facts that underpinned his belief that the alibi defense could not be made in good faith. Id. Specifically, Lee stated that they could not substantiate Shuey's claim that he was at a mall and then a golf course during the time of the incident. Id. at 1083. Notably, Lee did not think additional time would have changed the outcome of the investigation. Id. at 1082.

Lee also testified that his strategy at trial was to hold the State to its burden of proof and argue misidentification. Id. at 1088-89. He did not believe

a strategy of attacking the victim and calling her a liar was a reasonable strategy because it would have been offensive to the jury in light of the detailed and emotional account the victim gave of the assault. Id. at 1089-90, 1118-19. According to Lee, Shuey was aware of this strategy and approved of it. Id. at 1119. In denying relief, the circuit court found Lee to be more credible than Shuey.

In federal habeas review, a state court's factual determination is presumed correct unless the petitioner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Shuey, like he did in state court, attaches documentation to the Petition purporting to be from Verizon and Avis that show he placed a call that ended twenty minutes before the incident and he returned a car over three hours after the incident. Docs. 1-4; 1-5. Given the time frame of these records in relation to when the assault occurred, neither record corroborates Shuey's alibi. Shuey has not presented clear and convincing evidence establishing the existence of an alibi or that alibi evidence could have been obtained earlier. As such, the state court's factual finding that counsel properly investigated Shuey's alibi and was not ineffective for failing to raise a meritless defense are presumed correct. Those findings refute the contentions raised here regarding counsel's alleged deficiencies in investigating and putting forward an alibi defense.

As it relates to the other evidence Shuey contends his counsel failed to investigate, the record reflects that a witness testified that Shuey lived in Connecticut at the time of the incident but was visiting for a wedding. Resp. Ex. B at 361. The jury, therefore, heard this evidence. Regarding Shuey's alleged presence in the leasing office a month or two prior to the assault, this evidence was not introduced at trial and, therefore, is irrelevant. Likewise, the fact that the victim's manager did not observe someone running away is irrelevant given the amount of time that passed once the manager arrived. The victim testified that she locked the door and called 911 before calling her manager, which would have given Shuey ample time to flee the scene prior to the victim even notifying her manager. Shuey's remaining allegations are attempts to attack the victim's credibility that an assault actually happened at all. Like the circuit court, this Court finds Lee's strategy to be reasonable given the emotion and detail with which the victim testified. Indeed, under the circumstances of this case, not attacking the victim or calling her a liar is a reasonable strategic decision. Counsel cannot be deficient for reasonable strategic decisions. Given the lack of evidentiary value of these facts or the inapposite nature of these facts in regard to counsel's reasonable trial strategy, Shuey has failed to demonstrate either deficient performance or prejudice. For the above stated reasons, relief on the claim in Ground One is due to be denied.

## B. Ground Two

As Ground Two, Shuey asserts that his counsel failed to call an expert witness in eyewitness identification, such as Dr. John Brigham. Petition at 7-11. According to Shuey, hiring an expert would have aided his misidentification defense at trial. Id. Shuey contends that Dr. Brigham would have been able to testify about the unreliability of eyewitness testimony generally and in Shuey's case. Id. He maintains that the expert's testimony on this subject would have led the jury to conclude that the victim had misidentified Shuey as the assailant. Id.

Shuey raised a similar issue in his Rule 3.850 Motion. Resp. Ex. L at 43-46. The circuit court denied relief, finding in pertinent part:

> With respect to Defendant's assertion that Attorney Lee should have hired an eyewitness expert to explain to the jury the factors that might impair [the victim's] identification of Defendant and/or ability to accurately register her attacker's features, the Court finds that Attorney Lee effectively impeached [the victim] regarding these factors during cross-examination at trial. The trial transcript reflects that Attorney Lee cross-examined [the victim] concerning the fact that she was already in an agitated state immediately prior to interacting with her attacker due to the fact that she was working alone, as well as the fact that she observed a suspicious vehicle traveling slowly through the parking lot[.]
>
> . . . .
>
> Attorney Lee also drew attention to several features of the conversation that [the victim] engaged

28

in with her attacker that might have impacted her ability to accurately observe and/or recall his features, including the brevity of her initial interaction with her attacker; the fact that her peripheral vision was obscured by her hair during a portion of their conversation; and the fact that during the portion of their encounter immediately preceding the sexual battery, her focus on the firearm her assailant was holding may have impaired her ability to accurately register his features[.]

. . . .

Attorney Lee additional effectively rebutted the State's assertion that [the victim] was able to "see" during the course of the commission of the sexual battery because she only partially obscured her face with her sweater-jacket as instructed by the attacker[. . . . ] Additionally, as referenced in ground five, supra, Attorney Lee cross-examined Deputy Strausbaugh regarding [the victim's] misidentification of her assailant at Blockbuster approximately one month subsequent to the incident.

Finally, Attorney Lee elicited testimony from Deputy Strausbaugh on cross-examination that emphasized the length of time between the incident and [the victim's] subsequent pre-trial positive identification of Defendant, as well as the fact that the photo line-up including Defendant's picture was presented in black and white and the issues concerning Defendant's eye color[.]

. . . .

Attorney Lee again underscored the discrepancies and deficiencies regarding [the victim's] identification of Defendant during closing arguments[. . . . ] The Florida Supreme Court has found that where the jury is presented with argument that an eyewitness identification is unreliable, there is no

29

prejudice in trial counsel's failure to call an eyewitness identification expert." <u>McLean v. State</u>, 147 So. 3d 504, 511 (Fla. 2014) (<u>citing</u> <u>Rimmer v. State</u>, 59 So. 3d 763, 777 (Fla. 2010) ("Because counsel conducted an effective cross-examination of the eyewitnesses and consistently attacked the eyewitness identifications and the process of making those identifications, [the defendant] has not demonstrated that he was prejudiced by counsel's failure to obtain an eyewitness identification expert.")). Here, Defendant's counsel effectively cross-examined [the victim] regarding the sundry factors that might have impaired her eyewitness identification of Defendant; effectively cross-examined Detective Strausbaugh regarding the pretrial identification; and drove home many of those inconsistencies within his closing argument. The Court accordingly finds Defendant has failed to establish prejudice, and ground six will be denied.

<u>Id.</u> at 818-25. The Fifth DCA affirmed the denial of relief. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

"'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that federal courts will seldom, if ever, second guess.'" Knight v. Fla. Dep't of Corr., 936 F.3d 1322, 1340 (11th Cir. 2019) (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)). A petitioner's burden to establish prejudice "is particularly 'heavy where the petitioner alleges ineffective assistance [of counsel] in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." McKiver v. Sec'y, Fla. Dep't of Corr., 991 F.3d 1357, 1365 (11th Cir. 2021) (quoting Sullivan v. DeLoach, 459 F. 3d 1097, 1109 (11th Cir. 2006)). As such, the Eleventh Circuit has "held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." Id.

At the evidentiary hearing on this claim, Lee testified that he and Shuey never discussed hiring an eyewitness identification expert. Resp. Ex. L at 1087. Shuey neither called nor submitted written testimony from the proposed expert witness at the evidentiary hearing. Nor has he provided this Court with any evidence as to what the expert would say. As such, Shuey's claim of prejudice relies entirely on speculation, which is insufficient to warrant federal habeas relief. See McKiver, 991 F.3d at 1366 (finding petitioner's own conclusory testimony about what a witness would say inadequate to establish prejudice where petitioner failed to call witness or submit written testimony in

31

state postconviction proceedings). Accordingly, as Shuey has failed to demonstrate prejudice, his claim of ineffective assistance of counsel in Ground Two is due to be denied.

## C. Ground Three

Next, Shuey contends that his counsel failed to investigate and effectively cross-examine the victim concerning the filing of a worker's compensation claim as a result of the kidnapping and sexual assault. Petition at 11-13. Shuey asserts that the victim's boss was challenging her worker's compensation claim. Id. According to Shuey, this evidence would have demonstrated to the jury that the victim had a financial interest in prosecuting the case against him, which would have hurt her credibility and helped his misidentification defense. Id.

As ground nine of his Rule 3.850 Motion, Shuey raised a similar claim for relief. Resp. Ex. L at 52-53. In denying relief on this claim, the circuit court determined that:

> As to Defendant's claim that his attorney should have cross-examined the victim regarding the workers' compensation claim, Defendant has failed to demonstrate prejudice because there is no reasonable probability that the outcome of the trial would have been different if his attorney had elicited such testimony. The offense at issue took place on November 24, 2002. The victim did not identify the defendant in a photo line-up until August 3, 200[3]. The victim had the opportunity to view other photo line-ups prior to that time, but the victim did not

32

identify any possible perpetrators in those line-ups. The jury was aware of these previous attempts, and the State likely would have overcome any attempt to impeach based on the fact that the victim had prior opportunities to make a false identification. Further bolstering the State's position would have been the fact that the victim contacted the Detective on the case regarding a possible encounter with the perpetrator. Based on this occurrence, the Detective created a photo line-up that included the individual the victim encountered, and the victim still did not make an identification from that line-up. If the victim was inclined to make an identification just for the sake of making an identification, she likely would have picked someone from the first line-up presented. Accordingly, ground nine will be summarily denied.

Id. at 155-56. The Fifth DCA affirmed the denial of relief. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

This claim is based entirely on speculation. The existence of a worker's compensation claim and the employer's alleged challenge to the claim do not,

by themselves, demonstrate that the victim fabricated the sexual assault allegations. There are a number of reasons why an employer would challenge such a claim that do not necessarily include the fabrication of the incident. Speculation cannot form the basis of relief in an ineffective assistance of counsel claim. See Jenkins v. Comm'r, Alabama Dep't of Corr., 963 F.3d 1248, 1273 (11th Cir. 2020) (quotations omitted) (explaining that "more than mere conceivability is required to establish prejudice: The likelihood of a different result must be substantial, not just conceivable."); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

Moreover, at the evidentiary hearing on Shuey's Rule 3.850 Motion, Lee testified that raising the issue of the worker's compensation claim was not a good strategy because it would amount to an attack on the victim and the jury would look unfavorably on such an approach. Resp. Ex. L at 1092. The circuit court determined this was a sound strategic decision. This Court does not disagree, especially in light of the fact that Shuey has failed to provide any evidence to support his claim. For these reasons, relief on the claim in Ground Three is due to be denied.

### D. Ground Four

In Ground Four, Shuey argues that his counsel failed to investigate an audio recording of a 911 call. Petition at 14-18. Shuey alleges that his investigator obtained a 911 call from an unknown male. Id. In that recording, the man can be heard confessing to sexually assaulting the victim. Id. Shuey maintains that he was not the caller and asked his counsel to investigate the identity of the caller, but counsel failed to do so. Id.

Shuey raised a substantially similar claim in state court. Resp. Ex. L at 54-56. The circuit court denied relief, explaining in pertinent part:

> At the evidentiary hearing, Attorney Lee testified that he did have an old school cassette tape in his box of trial materials, but that he could not find a tape player to play the tape. However, in the course of representing Defendant, he made some notes on the outside of the tape case reflecting that the tape appeared to him to be more of a prank call than anything containing substantive material for reasonable doubt. He recalled that he most likely received the tape in the materials that Mr. Jacobs gave him, and that after listening to the tape, he did not believe it would be helpful to Defendant's case. He testified that his notes on the tape reflect the following: "Prank caller to JSA (gave me the p-u-s-s-y)."
>
> There was some confusion at the evidentiary hearing as to whether the tape to which Attorney Lee was testifying was the same tape referenced by Defendant in his motion. While Defendant insisted that the tape reflected a 911 call, and that Detective Strausbaugh should have been deposed to inquire what information law enforcement had obtained with

35

respect to that recording, Attorney Lee testified that the tape to which he was referring indicated the call was placed directly to his office (i.e. the office of J. Stephen Alexander) and was not a 911 call. No tape was ever played or introduced into evidence at the evidentiary hearing for the Court to review, and Defendant never submitted a copy or transcript of the tape which he alleges reflects a 911 call. Additionally, Attorney Fletcher indicated that he asked Attorney France if Attorney France had ever turned over such a call to the defense, and Attorney France stated that he did not have knowledge of such a call.

The Court finds that because Defendant describes the contents of the tape referred to in his motion as containing phrasing akin to "I didn't take that pussy . . . she gave it to me," and Attorney Lee's notes on the tape the contents of which he testified about reflect the comment "gave me the p-u-s-s-y," it is highly probable that Defendant and Attorney Lee are referring to the same tape. To that extent, the Court finds Attorney Lee's testimony credible concerning the fact that the call was placed directly to his law office, rather than to law enforcement, given that his notes clearly reflect the same and Attorney France specifically stated he did not recall having in the State's possession any tape containing a recording of a 911 call. The Court also finds Attorney Lee's testimony credible regarding his trial strategy not to use the limited time prior to trial to investigate the tape further after determining that it was a prank call and would be of no value to Defendant's case. Because Defendant has not provided a copy of the tape in support of his motion, the Court must rely solely on the testimonies of Defendant and Attorney Lee in determining whether Attorney Lee's strategy not to use the tape was reasonable; and accordingly finds Attorney Lee's testimony that the tape reflected a prank call persuasive. Given that the Court finds credible Attorney Lee's testimony that the tape reflected a prank call, the Court by extension finds

36

that Defendant has failed to establish any facts indicating that the failure to utilize that call in his defense prejudiced him in any way. Insofar as Defendant may be referring to a different alleged tape reflecting a call made directly to law enforcement, the Court cannot find credible Defendant's assertion that such a tape exists, as Attorney France and Attorney Lee both testified that they had no knowledge of a 911 call and the Court has been presented with no evidence indicating that a 911 call was ever made. For these reasons, the Court finds Defendant has failed to establish either ineffective assistance or prejudice, and ground ten will be denied.

Id. at 832-33. The Fifth DCA affirmed the denial of relief. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

At the evidentiary hearing, Shuey testified that a 911 call from a man claiming to be the suspect was in the discovery materials, but counsel refused to investigate it further. Id. at 1058-60. Lee testified, however, that his notes reflect that the discovery materials contained one audio tape of a 911 call from

a victim in a separate case in which Shuey was a defendant, and a second tape of a call to Lee's law office. Id. at 1110-13. As to this second tape, Lee wrote on the tape that it was a prank caller to "JSA," which Lee testified stood for J. Stephen Alexander, his law partner. Id. at 1116. Lee's notes further reflected that he listened to the tapes and wrote "nothing to substantiate for trial." Id. at 1112. According to Lee, he did not, at the time, believe the recording would have benefited the defense. Id. Shuey recalled himself at the evidentiary hearing and testified that his first attorney had this 911 audio recording, so it could not have been the tape of the prank call to Lee's employer, as Lee was not on the case yet. Id. at 1122. However, Shuey did admit that he and Lee were talking about the same recording, id. at 1121, a fact Shuey also concedes here, Petition at 17. Notably, Shuey never presented any audio recording into evidence. Resp. Ex. L at 1133.

The circuit court found Lee's testimony more credible than Shuey's; and, a presumption of correctness surrounds this finding unless Shuey can rebut it with clear and convincing evidence. Shuey attaches to the Petition a request he made to the St. Johns County Sheriff's Office regarding a 911 tape and an evidence receipt showing the existence of 1 "911 audio tape from JSO." However, Shuey has not provided the Court with a copy of the actual audio tape. Without more, this documentation does not amount to clear and convincing evidence that rebuts the presumption of correctness of the circuit

38

court's factual determination. Notably, at the evidentiary hearing, the prosecutor commented that the discovery material in Shuey's case included materials from other criminal cases against Shuey arising out of Jacksonville, St. John's County, and Gainesville. Id. at 1113-16. Therefore, without a transcript or a copy of the actual recording, the 911 tape Shuey references in the Petition could have come from one of his other criminal cases. As such, the documents attached to the Petition do not rebut the circuit court's factual findings. Moreover, Shuey agrees that the tape Lee referred to at the hearing was the same he is referencing in this claim. Lee, however, testified that he reviewed it at the time and determined it would not assist the defense at trial. Again, Shuey presents no evidence, clear and convincing or otherwise, to rebut the circuit court's determination that Lee's analysis of the recording was incorrect or a poor strategic decision. In light of the above, relief on the claim in Ground Four is due to be denied.

### E. Ground Five

Next, Shuey alleges that his counsel was ineffective for failing to use a peremptory strike against Juror Enid Fitzpatrick. Petition at 19-21. According to Shuey, Fitzpatrick admitted to seeing media coverage of his case the previous week before voir dire. Id. Shuey maintains that "[t]hough not disclosed during voir dire, the media coverage throughout the previous week discussed Shuey's background, other cases supposedly linked to Shuey of the

same nature, Shuey's prior convictions, and a variety of other information and evidence not presented at trial." Id. at 20. He argues that Fitzpatrick's viewing of this coverage "created reasonable doubt as to her ability to be fair and impartial." Id. To the extent the circuit court rehabilitated Fitzpatrick, Shuey contends that the circuit court's questions were leading, and Fitzpatrick's answers were equivocal. Id. at 20-21.

In his Rule 3.850 Motion, Shuey raised a similar claim for relief as a subclaim of ground thirteen. Resp. Ex. L at 62-65. In denying relief on this specific claim, the circuit court stated, in pertinent part:

> Defendant also raises issue with the fact that his trial counsel did not use peremptory challenges to exclude Ms. Enid Fitzpatrick and Ms. Bethany Hanson from the jury. "'[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased' to be entitled to relief." Owen v. State, 986 So. 2d 534, 549 (Fla. 2008) (quoting Carratelli v. State, 961 So. 2d 312, 324 (Fla. 2007)). Such bias must be plain on the face of the record. Id. Defendant has failed to demonstrate actual bias; therefore, Defendant's claim will be summarily denied. During jury selection, after general questioning of the panel, the Court, the State, and Defendant's attorney questioned the jurors at issue regarding any possible bias. Such questioning took place outside of the presence of the other veniremen. Ms. Fitzpatrick indicated that she saw something about the case in the paper about a week prior regarding when the case was going to be scheduled for trial. She stated that she did not read any of the details, that she does not think there is anything that would prevent her from being fair and impartial, and

40

> that she has not formed any opinions about the case.
> Based on Ms. Fitzpatrick's statements during voir
> dire, Defendant has failed to demonstrate actual bias
> by Ms. Fitzpatrick.

Id. at 159-60 (record citations omitted). The Fifth DCA affirmed the denial of

relief. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication

of this claim was not contrary to clearly established federal law, did not involve

an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Thus, Shuey is not entitled to relief

on the basis of this claim.

The record reflects that Fitzpatrick answered affirmatively when asked

if she had seen any coverage of  Shuey's criminal case in the media. Resp. Ex.

B at 79-80. The circuit court, along with defense counsel and the prosecutor,

questioned Fitzpatrick separately on this issue. Id. at 117-19. Fitzpatrick

stated that the only media coverage she observed was a story approximately a

week before trial that discussed the scheduling of the trial. Id. at 117. However,

she represented that she did not read the details of the story. Id. Indeed, she

41

specifically stated that "in fact, I really know very little about [the case]" other than what she heard the day of jury selection, and had not formed an opinion one way or the other about the case. Id. at 118. According to Fitzpatrick, she did not believe her limited knowledge would prevent her from being a fair and impartial juror, and that she could give the defense and State a fair trial. Id.

Based on this record, there is no evidence to suggest that Fitzpatrick knew any details of the case prior to trial or that she had preconceived notions regarding Shuey's guilt or innocence. She specifically stated she saw a report discussing scheduling of the trial but did not read the details of the story. More importantly, she said she could be a fair and impartial juror. On this record, the Court cannot say that it was unreasonable for Lee to opt not to use a preemptory strike.

Shuey speculates in Ground Five that because there was so much detailed reporting about his case during the week leading up to the trial that Fitzpatrick must have seen those reports and it must have influenced her decision as a juror. The record does not support either of these arguments and they are clearly speculative. Shuey has provided no evidence to support his contention that Fitzpatrick saw these other articles and, even if she had, would not have been able to give the defense a fair trial. As mentioned previously, speculation cannot support an ineffective assistance of counsel claim. See Jenkins, 963 F.3d at 1273; Tejada, 941 F.2d at 1559. Shuey has failed to

demonstrate deficient performance or prejudice; therefore, he is not entitled to relief on the claim in Ground Five.

## F. Ground Six

As Ground Six, Shuey argues that his counsel was deficient when he conceded throughout trial that the offenses actually occurred. Petition at 22-24. Shuey asserts that he did not agree to this strategy and wanted counsel to dispute that the victim was sexually assaulted. Id. Based on alleged discrepancies in the evidence, Shuey maintains that it would have been difficult for the State to have established that a sexual assault occurred. Id. As a result, Shuey contends that the State's case went virtually unchallenged and bolstered the victim's testimony overall. Id.

Shuey raised this claim in state court. Resp. Ex. L at 67-69. In denying relief on this claim, the circuit court explained:

> In ground fifteen, Defendant asserts that his trial counsel was ineffective for conceding at trial that the alleged crimes actually occurred and that [the victim] was the victim of the crimes alleged. Defendant specifically contends that he did not consent to this trial strategy, and that he did not believe it was wise or reasonable to concede that the crime occurred when there was no physical evidence linking Defendant to the crime aside from [the victim's] testimony. As delineated in ground four, supra, the Court finds credible Attorney Lee's testimony that he decided to pursue the strategy of conceding that the alleged crime occurred due to his belief that the value of any impeachment evidence he may be able to introduce would be outweighed by the danger of enraging the

43

jury by discrediting the victim's version of events. The Court finds that Attorney Lee's trial strategy did not constitute ineffective assistance, and that Defendant has failed to establish prejudice, for those same reasons provided in ground four, supra. Additionally, as delineated in ground seven, supra, and ground seventeen, infra, Attorney Lee's cross examinations of the officers involved in processing the crime scene and charging Defendant, as well as his closing argument, effectively established for the jury the lack of physical evidence linking Defendant to the crime. For these reasons, Ground Fifteen will be denied.

Id. at 834. The Fifth DCA affirmed the denial of relief. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

The Court notes that "[t]he Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved," and "[i]ntensive scrutiny and second guessing of attorney performance are not

permitted." <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing

<u>Strickland</u>, 466 U.S. at 689-90)). The Eleventh Circuit has explained that:

> Inquiries into strategic or tactical decisions challenged as ineffective assistance of counsel involve both a factual and a legal component. The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct. By contrast, the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact, so we decide it de novo.

<u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1330 (11th Cir. 1998). "In assessing

an attorney's performance under <u>Strickland</u>, 'strategic choices made after

thorough investigation of law and facts relevant to plausible options are

virtually unchallengeable.'" <u>Knight</u>, 936 F.3d at 1340 (quoting <u>Strickland</u>, 466

U.S. at 690).

    At the evidentiary hearing on this claim, Lee testified that the strategy

of calling the victim a liar would have looked bad in front of the jury. Resp. Ex.

L at 1089-90, 1118-19. Moreover, Lee stated that Shuey knew their trial

strategy was misidentification and lack of physical evidence going into trial

and Shuey felt confident about it. <u>Id.</u> at 1119. As the state court concluded,

such a strategy is not unreasonable. Moreover, Lee's decision not to argue that

the victim was not assaulted did not amount to a concession that Shuey

committed the crime. Instead, throughout cross-examination and closing

arguments, Lee emphasized the lack of physical evidence linking Shuey to the crime. Resp. Ex. B at 240-79, 281-82, 289-303, 304-05, 333-54, 370-71, 384-86. Shuey has presented no evidence to support his contention that this strategy was unwise. As such, relief on the claim in Ground Six is due to be denied.

## G. Ground Seven

As Ground Seven, Shuey asserts that his counsel misadvised him about the role his prior convictions would play if he chose to testify at trial. Petition at 25-30. Shuey contends that he wanted to testify in support of his alibi and misidentification defenses. Id. According to Shuey, his counsel advised him that if he testified "the State would automatically be allowed to introduce into this trial all of his prior convictions," including the details of and evidence admitted in those cases. Id. Counsel allegedly also told Shuey that he would withdraw if Shuey testified, and that he did not want Shuey to testify so that he could have a rebuttal closing argument. Id.

Shuey raised a substantially similar claim as ground sixteen of his Rule 3.850 Motion. Resp. Ex. L at 70-73. The circuit court denied relief on this claim, writing:

> In ground sixteen, Defendant claims that his trial counsel was ineffective for interfering with Defendant's right to testify by coercing, misinforming, and misadvising Defendant regarding the use of his prior convictions. Defendant also claims that his counsel threatened to withdraw if Defendant testified and counsel was ineffective for not allowing Defendant

46

to testify and failed to call Defendant to testify. The Court first notes that Defendant was informed that he had the right to testify and willingly waived that right on his own. Further, Defendant provides facts which refute his own claim. Defendant states the reasons his attorney provided for advising Defendant not to testify, including the fact that the State would introduce his prior convictions, his attorney wanted the opportunity to begin and end the closing arguments, and his attorney did not believe the State had proven their case. It is clear that Defendant's trial counsel had several reasonable bases for advising Defendant not to testify. Accordingly, based on Defendant'[s] own statements, it is clear Defendant's attorney did not engage in coercive or threatening tactics and that he did not misadvise or misinform the defendant. Accordingly, ground sixteen will be denied.

Id. at 162 (record citations omitted). The Fifth DCA per curiam affirmed the denial of relief on this claim. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

Criminal defendants have a constitutional right to testify on their own behalf. <u>Rock v. Arkansas</u>, 483 U.S. 44, 51-53 (1987). That right is personal and fundamental, meaning neither the court nor counsel can waive it. <u>United States v. Teague</u>, 953 F.2d 1525, 1532 (1992). Counsel gives ineffective assistance with respect to a defendant's right to testify where counsel "has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone." <u>Gallego v. United States</u>, 174 F.3d 1196, 1197 (11th Cir. 1999). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." <u>Teague</u>, 953 F.2d at 1534. An attorney is not deficient for strategically advising a defendant not to take the stand. <u>Id.</u> at 1533 ("[I]f defense counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify.").

Under Florida law, a party can attack the credibility of any witness with evidence that the witness has been convicted of a felony or a crime of dishonesty. § 90.610(1), Fla. Stat. "The general rule for impeachment by prior convictions, as codified in section 90.610, . . . is that it is restricted to determining if the witness has previously been convicted of a crime, and if so,

how many times." <u>Ross v. State</u>, 913 So. 2d 1184, 1186 (Fla. 4th DCA 2005).

However, "[w]here a witness attempts to mislead or delude the jury about his

prior convictions, the witness is subject to further questioning concerning his

convictions 'in order to negate any false impression given.'" <u>Pryor v. State</u>, 855

So. 2d 134, 136 (Fla. 1st DCA 2003) (quoting <u>Fotopoulos v. State</u>, 608 So. 2d

784, 791 (Fla. 1992)).

The record reflects that at the close of the State's case in chief, the circuit

court asked counsel if he had talked with Shuey regarding witnesses and

testifying on his own behalf. Resp. Ex. B at 392. Counsel stated he had not,

and the circuit court gave counsel time to confer with Shuey. <u>Id.</u> at 392-94. The

circuit court then held the following colloquy with Shuey:

> THE COURT: [. . .] Mr. Shuey, I know you've had a chance during these proceedings to talk [to] Mr. Lee. You understand that in any criminal case the defendant has the absolute right to testify if he or she want to. You understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you've talked with Mr. Lee about that right?
>
> THE DEFENDANT: Yes.

| | |
|---|---|
| THE COURT: | And you're exercising your right at this time not to testify in this case? |
| THE DEFENDANT: | That's correct. |
| THE COURT: | I didn't want to do this in front of the jury. I wanted to do it outside the jury, but I just wanted to make sure you put on the record that you've been offered an opportunity, and you've declined based on your discussions with your attorney? |
| THE DEFENDANT: | That's correct. |

Id. at 394-95. Based on this colloquy, Shuey understood he had the right to testify and that it was his decision to make.

According to Shuey's scoresheet at the time of sentencing he had three prior felony convictions, arising from one case, 2003-CF-2121. Resp. Ex. A at 640. Prior to trial, the State had moved to introduce similar fact evidence from Shuey's conviction in case number 2003-CF-2121, and the defense moved to exclude all similar fact evidence. Docs. 8-1 at 108-53; 8-3 at 5-18, 40-51. The circuit court reserved ruling on this issue until it heard the victim's testimony at trial. Id. After the victim testified and before the circuit court held its colloquy with Shuey concerning his right to testify, the circuit court ruled that evidence from Shuey's convictions in case number 2003-CF-2121 would not be admissible at trial. Resp. Exs. A at 595-98; B at 311. Nothing in this ruling

suggested that it would change in the event Shuey testified. Based on this record, even if counsel had misadvised Shuey, the circuit court's ruling on this issue prior to Shuey having the opportunity to take the stand cured any potential prejudice from counsel's alleged misadvice. In light of the circuit court's ruling, which was announced in Shuey's presence, Shuey cannot, in good faith, claim that he believed the nature of his prior felony convictions would come out if he took the stand.

As to Shuey's claim that counsel threatened to withdraw, again, by the time the circuit court had its colloquy with Shuey, the State had already presented its case and would not have permitted counsel to withdraw. Regarding counsel's advice not to testify so that counsel could have a rebuttal closing argument. Such a strategy is not unreasonable, particularly in light of the fact that counsel's investigator was unable to obtain corroborating evidence in support of Shuey's alibi, thus making Shuey's proposed testimony less credible. Accordingly, based on the above analysis, Shuey is not entitled to relief on the claim in Ground Seven.

### H. Ground Eight

Next, Shuey alleges that his counsel failed to object and move for a mistrial when the prosecutor made improper comments during jury selection, opening statements, and closing arguments. Petition at 31-43. Additionally,

according to Shuey, "[f]undamental error occurred when prosecutor's improper comments deprived Shuey of a fair trial as aforementioned." Id. at 43.

Shuey raised this claim as ground seventeen of his Rule 3.850 Motion. Resp. Ex. L at 74-86. In a thorough explanation, which the Court will not recite for brevity's sake, the circuit court summarily denied the claim as to many of the comments to which Shuey contended counsel should have objected and denied the others following an evidentiary hearing. Id. at 162-70, 834-41. Shuey appealed, and the Fifth DCA per curiam affirmed the denial of relief. Resp. Ex. P.

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

Regarding the comments made during voir dire, Shuey argues that his counsel should have objected to the following statements:

> I represent our community here today, the community of St. Johns County, in this criminal matter.

Resp. Ex. B at 56.

> Now, at the end of the trial, you may not like the defendant, heck, you may hate him, I don't know, but the law, in order for y'all to return a guilty verdict, does not require you to dislike the defendant. You're just telling us that, yea, the State proved their set of facts that they set out to prove.

Id. at 58 (emphasis added).

> As I present my testimony, I don't want one of you to be unable to listen to that testimony, to evaluate the evidence that's presented, to be able to deal with the case in a logical manner, you know -- albeit, you surely don't have to be detached. So I'd ask you -- we may speak about this later, and I'd just ask you think about those things.
>
> Certainly I also am upset by allegations of this nature, obviously, that's what I do for a living. And I'd hate -- for any right-minded persons to exclude themselves from being on the jury because they're upset. We all should be upset at certain matters. So I just ask you to maybe think about that and we'll talk about it a little bit later.

Id. at 62-63 (emphasis added).

> Do any of you have preconceptions of what a rapist should look like? Any stereotypes that you bring in here?
> . . . .
>
> I mean obviously the defendant here sits looking pretty mild-mannered, kind of, you know, peanut better and jelly looking type of guy. But, I mean, does

anybody think that an assailant should have a certain demeanor, should look a certain way?

Now, the last thing I'll speak to you about, and the court will read you a definition of this term, but it's this notion of reasonable doubt. It's the burden I carry. I carry 100 percent of this burden. That's kind of fair, isn't it? <u>I'm bringing the charges, right</u>?

<u>And -- but one thing reasonable doubt is not</u>, and I'm not going to go through that instruction with you, that's up to the court at a different time, <u>but it does not require me to remove all doubt from your minds for you to return a lawful guilty verdict, okay</u>?

Now, what I mean by that is that, you know, we all have raised children, bought homes, made very -- you know, changed careers, made important life decisions, and we've done each of these with doubt, correct? Okay. And it's with this doubt still in our minds that we have made good decisions, reasonable decisions throughout our lifetimes.

<u>And the burden that I carry to remove all reasonable doubt from your minds is like</u> -- very much akin to these important life decisions that we make, <u>but it is not to remove all, 100 percent, of your doubt from your minds</u>. Do we all agree with the concept?

And here's what I mean, <u>that the only way we could all be 100 percent sure what happened on a particular date at a particular time is to have all been there and watched it together</u>. Understand that? All I'm saying is that the law does not require that to have occurred obviously.

<u>Id.</u> at 64-66 (emphasis added).

According to Shuey, these comments were a prosecutorial tactic to

misinform and inflame the passion of those that would ultimately sit on his

jury and invoke the venire's sense of community and civic responsibility "to win over their allegiance and evoke a sense of community law." Petition at 31. When read in context, Shuey's allegations are unavailing. The first statement is a true fact about the prosecutor's role in the criminal proceedings. As to the second and third comments, these were meant to instruct the venire on what type of juror the prosecutor wanted. The fourth comments were questions concerning biases and an explanation of the burden of proof. None of these comments, in context, show a ploy to invoke a sense of community, inflame juror passions, or misinform the jury about the legal standard of proof. The prosecutor did not mischaracterize the burden of proof. See Poole v. State of Ga., 551 F.2d 683, 684 (5th Cir. 1977) ("[T]he State is not required to prove the guilt of the Defendant beyond all doubt. . . . It does not mean a vague, or arbitrary, or capricious doubt, but is a doubt for which a reason can be given, arising from a consideration of the evidence, a lack of evidence, a conflict in the evidence, the defendant's statement."). Based on the above analysis, any objection to these comments would have been meritless. Therefore, Shuey has failed to establish deficient performance. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994).

Next, Shuey contends his counsel should have objected to the following

opening statements:

> The defendant then rolled her over. The evidence will show that he covered her face with her own clothing, continued to sexually assault her. . . .
>
> But [the victim] at this time continued to see him and continued to watch him, could see past the covering over her face.
>
> . . . .
>
> Next you will hear from Detective Strausbaugh who sits at counsel table as to the investigation that followed. The testimony will indicated [sic] he called out dogs, the helicopter, they processed the crime scene, and that the defendant was not found at the scene at that time.
>
> That evidence, other evidence possible to gather was not found at that time. And he will explain to you a little about the nuances of that. I know we hear a lot of things on TV, there's a lot of TV shows where they go into this McGyver [sic] type of science fiction about what is found and not found, and ask you to listen to that testimony very carefully.

Resp. Ex. B at 192-93 (emphasis added). According to Shuey, these comments

misstated facts and mislead "the jury into believing that evidence is only found

on science fiction type TV shows, not in real life situations, and that's why

there's a lack of evidence in this case and/or no evidence linking Shuey except

[the victim's] allegation." Petition at 32-33.

The victim testified that when Shuey ordered her to cover her face with her jacket or sweater, she made sure to arrange it in such a way that she could still partially see what was happening. Resp. Ex. B at 224-25. Accordingly, the prosecutor did not misstate the facts. Regarding the later comment, Shuey's interpretation is unreasonable. The prosecutor never said or implied that evidence is never found. Instead, the prosecutor told the jury that Strausbaugh would inform their understanding of why sometimes no DNA or fingerprint evidence is found. Shuey has failed to establish the comments were objectionable; therefore, counsel is not deficient for failing to raise an objection. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

Finally, as to counsel's failure to object to allegedly improper closing arguments, in Shuey's initial brief on direct appeal, he made similar allegations of error, including fundamental error, as to the prosecutor's statements during closing argument. Resp. Ex. C at 12-15. The Fifth DCA found no error existed, fundamental or otherwise, when it affirmed his convictions and sentences. Resp. Ex. P. As these comments did not amount to fundamental error on direct appeal, they could not support a claim of prejudice under Strickland. See Strickland, 466 U.S. at 694-95 (determining that the prejudice standard in ineffective assistance of counsel claims should be lower than an outcome-determinative standard under which a reviewing court must conclude whether an error more likely than not altered the outcome of the

case); <u>Chandler v. State</u>, 848 So. 2d 1031, 1046 (Fla. 2003) ("Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the Strickland test."). Accordingly, to the extent Shuey asserts counsel was deficient for failing to object to the comments made during closing arguments, the claim is denied due to Shuey's failure to demonstrate prejudice. In light of the above analysis, relief on the claim in Ground Eight is due to be denied.

## I. Ground Nine

As Ground Nine, Shuey contends that his counsel failed to file a motion to dismiss the charges prior to trial and adequately argue a motion for judgment of acquittal. Petition at 44-48. According to Shuey, his counsel should have argued that other than the victim's uncorroborated allegations, there was insufficient evidence to either charge or convict him of the offenses. <u>Id.</u> Shuey further contends that a "fundamental error" occurred when the State failed to prove beyond a reasonable doubt that Shuey was guilty of the charged offenses. <u>Id.</u>

Shuey raised this claim before the circuit court. Resp. Ex. L at 67-70. In denying relief on this claim, the circuit court determined:

In ground eighteen, Defendant asserts that his trial counsel was ineffective for failing to file a motion to dismiss all of the charges against Defendant on the basis that there was no evidence linking him to the instant case aside from [the victim's] uncorroborated allegation and no evidence that [the victim] was sexually battered aside from her allegations. Defendant additionally contends that counsel should have moved for a judgment of acquittal regarding the sufficiency of the evidence that Defendant was the perpetrator of the assault on [the victim] and/or that an assault actually occurred. Insofar as Defendant's contentions are predicated on the lack of physical evidence that an assault actually occurred, the Court has found reasonable Attorney Lee's decision not to challenge [the victim's] testimony that the offenses with which Defendant was charged actually occurred.

As for Defendant's argument that Attorney Lee should have filed a motion for a judgment of acquittal based on the State's lack of physical proof that Defendant sexually battered and kidnapped the victim, this claim was raised on direct appeal. Defendant asserted on direct appeal that the evidence in his case was "virtually non-existent," and that he "was not linked to this case by way of fingerprints, fibers, hair, DNA or trace evidence of any kind," and that "there was absolutely no independent verification of his identity as the perpetrator." Also on direct appeal, Defendant underscored inconsistencies in the victim's eyewitness identification of him as the perpetrator of the offenses, as well as argued that her testimony was not corroborated by physical evidence. Defendant specifically asserted a claim for ineffective assistance of counsel on appeal regarding this issue, contending that "the trial attorney should have moved for a judgment of acquittal and new trial based upon the arguments presented herein." Accordingly, the Court finds this claim is not cognizable in the instant

motion. <u>Griffin</u>, 866 So. 2d at 16.[10] However, even if this claim were cognizable, after reviewing the trial transcript, the Court finds that given [the victim's] lengthy account of the assault, coupled with the conviction she expressed when identifying Defendant, it would not have been reasonable for Attorney Lee to move for judgment of acquittal. The State presented ample testimony from [the victim] delineating the specific details of her assault, as well as testimony from the officers who responded to the scene of the incident. The Court finds that Defendant has failed to establish that the State's evidence was so insufficient that a motion for judgment of acquittal would have been supported. Additionally, given that Defendant raised the issue of insufficiency of the evidence on direct appeal and his conviction was nonetheless affirmed, the Court finds Defendant has failed to establish that Attorney Lee's failure to file such a motion prejudiced him.

Finally, the Court finds that Defendant has failed to establish Attorney Lee's failure to file a motion to dismiss the charges was ineffective or prejudicial. Defendant's sole basis for asserting that Attorney Lee should have filed a motion to dismiss the charges is that there was no physical evidence linking Defendant to the incident. However, as aforementioned, the State had put forth [the victim's] testimony, which included an identification of Defendant in a photo lineup. Defendant has wholly failed to provide any argument or evidence demonstrating that a motion to dismiss would have been granted. For these reasons, ground eighteen will be denied.

<u>Id.</u> at 842-43 (record citations omitted). The Fifth DCA affirmed the denial of relief. Resp. Ex. P.

_____

[10] <u>Griffin v. State</u>, 866 So. 2d 1 (Fla. 2003).

To the extent that the Fifth DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Shuey is not entitled to relief on the basis of this claim.

As previously discussed, the victim positively identified Shuey as the man who sexually assaulted her. She gave extensive testimony about her ability to observe Shuey, who did not attempt to hide his identity during the attack. Her testimony constituted evidence sufficient to overcome both a motion to dismiss and motion for judgment of acquittal. See Lett v. State, 668 So. 2d 1094, 1094 (Fla. 1st DCA 1996) (agreeing with trial court that defendant was not entitled to a judgment of acquittal on aggravated assault and battery charges because "the unrebutted victim's testimony alone provided sufficient evidence to submit the charges to the jury."). Because counsel is not deficient for failing to raise a meritless argument, see Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573, the claim for relief in Ground Nine is due to be denied.

**J. Ground Ten**

As his final claim for relief, Shuey argues that his counsel failed to object to the circuit court abandoning its neutrality when it stated it did not intend to grant any continuances. Petition at 49-51. Shuey contends that after the circuit court removed Shuey's first attorney, it admonished Shuey that he and his new attorney would still need to be ready for the same time trial date and that the circuit court would not grant a continuance. Id. Based on the circuit court's admonishment, Shuey asserts that counsel declined to request a continuance, which, according to Shuey, resulted in the defense being unable to obtain evidence in support his alibi defense prior to trial. Id.

Respondents contend that Shuey failed to exhaust this claim, as he raises this issue for the first time in his Petition. Response at 18-20. Shuey concedes he did not exhaust this claim, but requests the Court review the merits of the claim pursuant to Martinez v. Ryan. Reply at 12-14. The Eleventh Circuit has explained the holding of Martinez as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the

> prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if it "has some merit." Martinez, 566 U.S. at 14. For purposes of determining whether postconviction counsel was ineffective, a petitioner "must show more than the mere fact they failed to raise potentially meritorious claims; he must show that no competent counsel, in the exercise of reasonable professional judgment, would have omitted those claims." Hittson v. GDCP Warden, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original).

The record reflects that law enforcement arrested Shuey in August of 2003. Resp. Ex. A at 3-4. In March of 2005, the circuit court appointed Lee as counsel. Resp. Ex. L at 1077-78. Approximately a year and a half had passed since Shuey's arrest when Lee took over the case, and according to Lee, Shuey's previous counsel had done a substantial amount of work on the case. Id. at 1078-79. Moreover, Lee's own investigation uncovered no facts to corroborate Shuey's alibi defense. Id. at 1081-85. Based on Lee's testimony at the evidentiary hearing, there would have been no basis for him to request a

63

continuance. As such, Shuey has failed to establish deficient performance or prejudice. Accordingly, this claim is not substantial and, therefore, is unexhausted. Relief on the claim in Ground Ten is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Shuey seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Shuey "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Shuey appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of April, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:     David Shuey #V22099
       Counsel of record